UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CSX TRANSPORTATION, INC., } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:13-cv-00982-RDP |
| } | |
| PSL NORTH AMERICA, LLC, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

This matter is before the court on various Motions in Limine. (Docs. # 73, 75, and 76). The Motions have been fully briefed. (Docs. # 77, 79, 80, and 81).

**I.      Background**

This lawsuit arises out of an accident that occurred on Wednesday, September 19, 2012, at approximately 3:00 a.m. at CSX Transportation, Inc.'s terminal in Birmingham, Alabama. Plaintiff claims that steel pipe, which was loaded on railcar PTTX 154166 by Defendant PSL, came off the railcar while a CSX train was leaving the terminal and that caused other railcars to lose their loads resulting in property damage. CSX alleges that the cause of this accident was PSL's failure to properly load and secure its sixty foot sections of steel pipe for rail transportation. PSL denies CSX's allegations.

PSL's Motion (Doc. # 73) seeks to exclude the following evidence:

1.      CSX's Expert, Gary Wolf's, testimony regarding the cause of the subject accident.

2.      CSX's damages claim for reimbursement in the amount of $518,028.19 it paid to Glovis America for automobiles damaged on a railcar on a track adjacent to the accident.

      3.      CSX's damages claim for reimbursement in the amount of $54,053.65 it paid for damage to nine railcars owned by TTX Corporation occurring as a result of the subject accident.

      4.      Any untimely disclosed expert testimony.

      5.      Any statement or testimony that Defendant may be covered by liability insurance.

      6.      Any statement or testimony regarding any settlement offers or offers of compromise.

      7.      Evidence of the alleged contract (and any amendments thereto) between CSX and PSL.

      8.      Any testimony or evidence concerning whether any PSL railcar, other than PTTX 154166, was improperly loaded.

      9.      The CSX Report of Derailment dated September 19, 2012.

CSX's Motions in Limine (Docs. # 75 and 76) seek to exclude:

      1.      Any suggestions that surveillance video of the railcars at issue, on the date of the accident, other than from the four cameras already produced, ever existed.

      2.      Any suggestion that the railcars involved in the accident at issue were "humped"[1] at any point in transit.

## II.    Standard of Review

The court begins with the tautological proposition that the parties may refer to evidence, documents, and testimony during their opening statements and questioning that they *reasonably*

---

[1] "Humping" involves the use of a man-made hill, or "hump," to make up trains using the force of gravity. This practice often causes a collision when the "humped" railcar meets stationary railcars at the bottom of the hump.

*believe will be admitted.*[2]  *See, e.g. Amegy Bank Nat. Ass'n v. DB Private Wealth Mortgage, Ltd.*, 2014 WL 791505, *2 (M.D. Fla. 2014).  But it would be unprofessional for counsel to refer to particular evidence when there is not a *good faith and reasonable basis* for believing such evidence will be tendered and admitted in evidence.  *United States v. Dinitz*, 538 F.2d 1214, 1221 (5th Cir. 1976).  The parties should seek guidance from the court when it is not crystal clear that evidence will be admissible.  A proffer of anticipated testimony may be required before counsel is allowed to proceed on an issue on which evidence has not been, or is not reasonably certain to be, admitted.

As to the motion to exclude Plaintiff's expert, Wolf, the admissibility of expert testimony is governed by Federal Rule of Evidence 702, along with *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) and its progeny.  Rule 702 provides for the admission of expert testimony when "scientific, technical, or other specialized knowledge will assist the trier of fact."  In *Daubert*, the Supreme Court held that scientific expert testimony is admissible only if the proffered testimony is both relevant and reliable.  "[A] district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability."  *Dhillon v. Crown Controls Corporation*, 269 F.3d 865, 869 (7th Cir. 2001); *see also U.S. v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[2] The ABA Standards for Criminal Justice specifically address this issue.  They provide that in an opening statement, a lawyer should confine his remarks to a brief statement of the issues in the case and evidence he intends to offer *which he believes in good faith will be available and admissible.*

>   (c) the testimony is the product of reliable principles and methods; and
>
>   (d) the expert has reliably applied the principles and methods to the facts of the case.[3]

Accordingly, under Rule 702, "this [c]ourt has an obligation to screen expert testimony to ensure it stems from a reliable methodology, sufficient factual basis, and reliable application of the methodology to the facts." *Whatley v. Merit Distribution Services*, 166 F.Supp.2d 1350, 1353 (S.D. Ala. 2001) (citations omitted).

To aid in determining reliability under Rule 702, courts look to the non-exclusive factors set forth in *Daubert*:

>   (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community.

*United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) (citing *Daubert*, 509 U.S. at 592–95); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999) ("[*Daubert's*] list of factors was meant to be helpful, not definitive."). Under *Daubert*, "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments) (citations omitted). The notes to Rule 702 make clear that "[n]othing in [Rule 702] is intended to suggest that experience alone -- or experience in conjunction with other knowledge, skill, training or education -- may not provide a sufficient foundation for expert testimony." *Id.* The Rule "expressly contemplates

---

[3] Rule 702 was amended in 2011. According to the Advisory Committee Notes (2011 Amendments) to Rule 702, "[t]he language of Rule 702 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility."

that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.* But, "[a]s gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Chapman v. Procter & Gamble Distributing, LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) (quoting *Kilpatrick v. Breg, Inc*., 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct," but must establish "by a preponderance of the evidence, it is reliable." *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citing *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 744 (3d Cir. 1994)).

**III.   Discussion**

    **1.   Plaintiff's Expert, Gary Wolf**

Defendant's primary objections to Wolf's testimony are that he did not conduct any testing regarding his opinions in this case, he did not visit the accident scene until over a year after the accident, and he did not review other witnesses' depositions. (Doc. # 73). Defendant argues that these (and other) issues render Wolf's testimony speculative. Defendant also asserts that Plaintiff "withheld" from Wolf surveillance videos that, it argues, existed at one time. This last argument is based on asserted facts which Plaintiff disputes.

The fact remains, however, that Defendant does not challenge Wolf's qualifications. He has extensive, if not unrivalled, experience in investigating train accidents. As noted above, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert

testimony." Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments). "Nothing in [Rule 702] is intended to suggest that experience alone -- or experience in conjunction with other knowledge, skill, training or education -- may not provide a sufficient foundation for expert testimony." *Id.*

The court believes it is clear that Wolf's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a). Although Wolf was not present to witness the accident, his testimony is based on sufficient facts or data, and he can be cross-examined as to any the import of any information which was allegedly withheld from him. As one who provides training on how to reconstruct train accidents, his testimony is the product of reliable principles and methods. Defendant has not argued that Wolf misapplied any principles and methods to the facts of the case, just that he was provided insufficient data to draw his conclusions.

The issue, therefore, is whether the questions about Wolf's methodology, or lack thereof, go to the weight or the admissibility of the proffered evidence. "The Eleventh Circuit has held that "[i]ssues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

The court finds that Defendant's arguments go to the weight and credibility of Wolf's proffered evidence, not its admissibility. At trial, Defendant will have ample opportunity to

cross-examine Wolf in order to test his credibility and opinions in front of the jury. Defendant's Motion in Limine seeking to exclude Wolf's testimony is due to be denied.

### 2. and 3. Plaintiff's Claim for Amounts Paid for Freight Damage and Damage to Nine Railcars

Plaintiff has made both breach of contract and negligence claims against Defendant. Putting aside any choice of law issue, Alabama Pattern Jury Instruction 11.01 defines compensatory damages as those that are "awarded to fairly and reasonably compensate for the harm caused by another's wrongful conduct." Ala. Pattern Jury Instructions Civ. 11.01 (Comm. 2015). "As a general rule, damages in a breach of contract action are that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached." *Alabama Mut. Ins. Corp. v. City of Vernon*, 2013 WL 5584018, *3 (Ala. 2013), *reh'g denied* (Feb. 20, 2015). In tort, the scope of liability is much broader than in contract. Almost all damages proximately flowing from the cause are recoverable. *Employees' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 983–84 (Ala. 1998).

Defendant's Motion in Limine is based on a misconception regarding Plaintiff's alleged damages. Plaintiff does not seek damages for any injury to its own personal property. That is, the harm for which Plaintiff seeks to be compensated is not based upon any diminution in the value of its own personal property. Rather, Plaintiff claims that Defendant's wrongful conduct (*i.e.*, negligence or breach of contract) caused damage to property owned by Plaintiff's customers which Plaintiff was tasked with transporting. Plaintiff was required under its arrangements with its customer to pay certain amounts for damages to that property—the cars being transported and the railcars owned by a customer. Plaintiff claims it was obligated to pay these amounts as a result of Defendant's wrongful conduct. A jury may consider this claim for damages.

7

Defendant's Motion in Limine on Plaintiff's freight damages claim and claim for damages to railcars is due to be denied.

### 4. Untimely Disclosed Expert Testimony

Plaintiff does not oppose Defendant's Motion in Limine on this issue. Therefore, that portion of Defendant's Motion seeking to exclude untimely disclosed experts is due to be granted.

### 5. Liability Insurance

Plaintiff does not oppose Defendant's Motion in Limine on this issue. Therefore, that portion of Defendant's Motion seeking to exclude any reference to Defendant being covered by liability insurance is due to be granted.

### 6. Settlement Offers

Plaintiff does not oppose Defendant's Motion in Limine on this issue. Therefore, that portion of Defendant's Motion seeking to exclude any reference to settlement offers or offers of compromise is due to be granted.

### 7. Alleged Contract between Plaintiff and Defendant

Defendant argues that the contract between the parties is not signed, that it has not been authenticated, and that it is therefore due to be excluded. Plaintiff responds that the contract can be easily authenticated at trial. Plaintiff also asserts that Defendant's response to Request for Production 25 identifies the contract at issue as a contract between the parties. Defendant's Motion as to the contract is due to be denied; if properly authenticated, the contract, and/or any relevant amendments, may be admitted at trial.

### 8. Any Improperly Loaded Railcar Other Than PTTX 154166

Defendant argues that Plaintiff should be prohibited from presenting evidence that any railcars other than the one that is believed to have caused the accident (PTTX 154166) were improperly loaded.  Federal Rule of Evidence 406 provides that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice."  Evidence that other railcars were improperly loaded is therefore admissible under Rule 406 to show that the particular railcar at issue was similarly loaded.  Defendant's Motion as to evidence regarding other railcars being improperly loaded is due to be denied.

### 9. The September 19, 2012 Report of Derailment

Defendant also seeks to exclude the Report of Derailment, claiming (1) that it is "filled with hearsay" and (2) was not produced as an expert report.  Plaintiff agrees that the report contains hearsay, along with other information which is not hearsay.  Plaintiff states that if it "elects to introduce any portion of the report that contains hearsay, [it] will (of course) offer the proper foundation for doing so under the established hearsay exceptions under the Rules of Evidence."  (Doc. # 79 at 19–20).  First, it is not even clear whether Plaintiff intends to offer the report at trial.  Second, if Plaintiff opts to offer the report, it should be given an opportunity to lay a proper foundation for its admission. Defendant's Motion seeking exclusion of the report of Derailment is premature.[4]  Therefore, Defendant's Motion regarding the report is due to be denied without prejudice.  However, before Plaintiff offers the Report of Derailment at trial, it shall notify the court and Defendant of its intent to do so.

---

[4] Whether the report qualifies as a business record under Rule 803(6) remains an unresolved question.

### 10. "Other" Surveillance Videos

Plaintiff seeks to preclude Defendant from making any statement or suggestion to the jury that any relevant surveillance videos exist (or previously existed) other than those that have been produced. It is not entirely clear what evidence or argument Defendant intends to introduce on this issue. However, there is a screen shot of the railcars taken from Camera 7 two days before the accident. Defendant apparently believes that Plaintiff should have produced additional video footage from Camera 7. Additionally, Defendant asserts that certain testimony of Robert Holtz suggests that there was continuous footage of the railcars in the yard at issue at all times. Holtz testified that there was surveillance video of "receipt, processing, assembly into and outbound train. So the whole process is capture[d]. … Receipt, processing, assembly and departure." (Doc. # 77 at 3). However, Holtz also testified that "we don't have a camera positioned in the center of the departure yard. … One of the videos I captured is a advantage [sic] point from the north end of that receiving yard where the train is actually being assembled. That is the last vantage point you have." (Doc. # 75-1 at 5).

Defendant wishes to address the question of what cameras captured what areas of the yard and whether all relevant video from each of those cameras was produced. However, before making *any insinuation* that any relevant videos exist (or once existed) and were either not produced or destroyed, Defendant must make an affirmative offer of admissible proof on this issue. That is, no mention of this issue may be made before the jury until competent evidence which raises the question of a failure to produce is admitted. Thus, Plaintiff's Motion on this issue is due to be granted in part (to the extent that the issue shall not be addressed in opening

statements), and denied in part (to the extent that, at this point, it is premature to categorically exclude such evidence).

### 11. Railcar Humping

Plaintiff seeks to preclude Defendant from suggesting that the railcars at issue were "humped." Apparently, Defendant initially questioned whether the cause of the accident was that Plaintiff had "humped" the railcars. At this point, Plaintiff asserts Defendant has no competent evidence to suggest that the railcars were humped; rather, the only thing that suggests the cars may have been humped is that Defendant does not know how the accident occurred because there is no video recording of the accident.

Provided there is a good faith basis for doing so, Defendant may elicit evidence from witnesses regarding whether any "humping" occurred. However, before making *any insinuation* to the jury that the railcars may have been "humped," Defendant must make an affirmative offer of competent proof on this issue. Therefore, no mention of this issue shall be made in opening statements or until such time as competent evidence indicating that the railcars were humped is admitted. Therefore, Plaintiff's Motion on this issue is due to be granted in part to the extent that the issue shall not be addressed in opening statements, but denied to the extent that at this time it is premature to rule on whether the evidence may be presented at trial.

**DONE** and **ORDERED** this December 17, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE